UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RONNIE J. RICE

    Petitioner,

    v.

WARDEN,

    Respondent.

CAUSE NO.: 3:17-CV-738-JD-MGG

OPINION AND ORDER

Ronnie J. Rice, a prisoner without a lawyer, filed a habeas corpus petition to challenge his conviction and sentence for murder under Case No. 45G03-0712-MR-11. Following a guilty plea, on January 12, 2012, the Lake County Superior Court sentenced Rice to life without parole.

FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> Maxine Urbanczyk arrived to work at Kentucky Fried Chicken in Merrillville at around 8:30 a.m. on December 10, 2007. A store surveillance video shows Ms. Urbanczyk going to the back door, looking through a peephole, opening the door, and appearing to be familiar with the person on the other side. She handed the person a cordless telephone and then placed a piece of cardboard such that the door would not completely close, thus allowing access to the restaurant. A short time later, the video shows Rice, who worked at the restaurant, entering through the back door

1

wearing a grey colored sweatshirt. Another surveillance camera captured Rice crouching down behind the front counter where the safe is located and taking items from the safe. A few minutes later, Rice is seen exiting the back door. Our Supreme Court, in considering the nature of the offense upon review of Rice's direct-appeal challenge to his LWOP sentence, summarized what transpired while Rice was inside the restaurant.

Rice arrived at work to rob the safe, but he needed Ms. Urbanczyk's help to do it. Not wanting to leave any witnesses to his crime, he attacked Ms. Urbanczyk from behind with both a chair and a hammer. She sustained 15 head injuries including facial lacerations, cranial fractures, brain contusions, and cranial hemorrhaging; a fractured rib cage; and a bruised left lung. She died from "extensive head injuries with chest injuries caused by blunt force trauma."

A short time later two employees arrived at the restaurant but were unable to gain access through the front door. Rice came from the back of the building, approached one of his coworker's cars, took off his "greyish looking" sweatshirt, and put it in the back of her car. Rice then asked his other coworker if he could wear his black sweatshirt.

During one of his interviews with police, Rice admitted that after he took the money from the safe, he approached Ms. Urbanczyk from behind and pushed her down and then hit her with a chair. At some point he grabbed a hammer and "just went berserk."

During the investigation, police located a hammer behind a filing cabinet at the crime scene. Swabs of blood taken from Rice's grey sweatshirt and jeans matched Ms. Urbanczyk's DNA profile. Ms. Urbanczyk's store keys were found at the police station where Rice had hidden them while being interviewed. Ms. Urbanczyk's jacket and bags of cash totaling $3667.89 were recovered from a dumpster near the area from where Rice appeared as he approached the front of the restaurant and encountered his coworkers.

On December 12, 2007, Rice was charged with murder, a felony, and murder in the perpetration of a robbery, a felony. Rice's family hired an attorney to represent Rice. On February 5, 2008, the State amended the charging information to include a charge of robbery as a class B felony. The State also filed a request to seek a sentence of LWOP. The LWOP designation listed one aggravator—Rice killed the victim while committing or attempting to commit robbery.

On September 18, 2008, Rice filed a motion to suppress his statements to police and evidence gathered during a warrantless search of his home. The trial court conducted a suppression hearing over three days and issued an order denying Rice's motion to suppress on February 24, 2009. Rice's belated motion for certification for interlocutory appeal was granted by the trial court, but this court denied his motion to accept jurisdiction.

On February 2, 2010, the trial court granted Rice's motion to continue the trial to afford his mitigation expert additional time to investigate and prepare a report. On February 16, 2010, the trial court granted Rice's petition for public fund payment and reimbursement for mitigation-expert expenses.

On January 18, 2011, six days before his scheduled jury trial, Rice pled guilty as charged without the benefit of a plea agreement. Rice submitted a statement of facts to serve as the factual basis for his guilty plea and therein acknowledged that he faced a sentence of LWOP and that sentencing would be left to the discretion of the trial court. After several continuances, a sentencing hearing was held January 9 through 12, 2012. The State requested that the court impose a sentence of LWOP. As mitigating evidence, Rice's trial counsel called his mother and sister as witnesses and submitted three exhibits. At the conclusion of the hearing, the trial court sentenced Rice to LWOP.

ECF 10-13 at 2-6.

Rice argues that he is entitled to habeas corpus relief. He asserts that he received ineffective assistance of counsel because trial counsel advised him to plead guilty and failed to present sufficient mitigating evidence at the sentencing stage. He further asserts that the trial court erred in accepting his guilty plea as voluntarily and intelligently made[1] and that the trial court violated his rights under the Eighth Amendment by failing to consider evidence properly at the sentencing stage.

---

[1] In the habeas petition, Rice is not asserting mental incompetency. *See United States v. Teague*, 956 F.2d 1427, 1432 (7th Cir. 1992) ("The test for competency is whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him.").

## PROCEDURAL DEFAULT

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). For a federal court to hear his or her claims, a habeas petitioner must have fully and fairly presented his or her federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceeding." *Lewis*, 390 F.3d at 1025. "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory. *Id.*

Rice presented the claims relating to ineffective assistance of counsel and the acceptance of his guilty plea to the Court of Appeals of Indiana and the Indiana Supreme Court at the post-conviction relief stage. ECF 10-10; ECF 10-14. Rice challenged the sentencing decision on direct appeal, but he did not do so on federal grounds. ECF 10-3. Though he challenged the sentencing decision on federal grounds at the post-conviction relief stage, the appellate court declined to consider it on the basis of res judicata. ECF 10-13 at 19-20. Therefore, Rice is procedurally defaulted on the claim

that the trial court violated his rights under the Eighth Amendment by failing to consider evidence properly at the sentencing stage.

Rice asserts that appellate counsel was ineffective for not challenging his sentencing claim under the Eighth Amendment on direct appeal because he failed to preserve the claim for federal habeas review.[2] A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2382 (2009). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). The court will assume without deciding that Rice has shown cause and prejudice to excuse procedural default and will consider this claim on the merits.[3]

## ANALYSIS

In the habeas petition, Rice asserts that he received ineffective assistance of counsel and that the trial court erred in relation to his guilty plea and sentencing. "Federal habeas review exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted).

---

[2] As indicated below, the court is reviewing the underlying Eighth Amendment claim. Therefore, to the extent Rice presents this argument as a freestanding ineffective assistance of counsel claim, he can no longer demonstrate prejudice, and the court finds that it is not a basis for habeas relief.
[3] Notably, federal courts have the discretion to consider claims for habeas relief under certain circumstances even if such claims are procedurally barred. 28 U.S.C. § 2254(b)(2).

5

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods*, 135 S. Ct. at 1376 (quotation marks and citations omitted). Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

On February 5, 2008, the prosecution charged Rice with murder and sought a sentence of life without parole. Direct Appeal App. 34. Under Indiana law, if the prosecution seeks a sentence of life without parole and obtains a murder conviction by

6

jury trial, the jury issues a sentencing recommendation and must find that at least one aggravating circumstance exists beyond a reasonable doubt to recommend life without parole. Ind. Code § 35-50-2-9(a), (d). Aggravating circumstances include intentionally killing another person while committing a robbery. Ind. Code § 35-50-2-9(b)(1). Mitigating circumstances include whether "the defendant was under the influence of extreme mental or emotional disturbance when the murder was committed" and whether "the defendant's capacity to appreciate the criminality of the defendant's conduct or to conform that conduct to the requirements of the law was substantially impaired as a result of mental disease or of intoxication." Ind. Code § 35-50-2-9(c).

Prior to the guilty plea, trial counsel moved to suppress Rice's confession on the basis that he did not give it voluntarily and submitted the unfinished report of Dr. Savarese, a clinical social worker, on his mental condition. Direct Appeal App. 45-47, 61-85. In the report, Dr. Savarese noted that Rice agreed to the police officers' comments without thinking, was emotionally detached and unresponsive to the circumstances, compulsively attempted to obtain his mother's approval, and either could not remember what happened or did not fully accept that his memories reflected reality. He also noted Rice's history of dissociation, memory deficiencies, dependent personality disorder, and bipolar disorder and opined that his confession was involuntary. *Id.* The trial court summarily denied the motion to suppress. *Id.* at 109.

On January 18, 2012, Rice plead guilty to the charge of murder. Guilty Plea Tr. 10. At that time, the prosecution had gathered substantial evidence, including Rice's confession, a video recording of Rice and the victim alone in the restaurant immediately

7

before her demise, and DNA confirmation that the blood of the victim was on Rice's clothes. Sent. Tr. 78-81, 182-87; Sent. Ex. 75. At the guilty plea hearing, Rice testified that he suffered no mental impairment that would prevent him from understanding the proceedings and that he was satisfied with the performance of trial counsel. Guilty Plea Tr. at 5. He testified that he was aware that by pleading guilty he was waiving numerous rights, including his right to a jury trial. *Id.* at 7. He also affirmed that his decision to plead guilty was not the result of any threats and promises and was an act of his own free will. *Id.* at 11; Direct Appeal App. 159-60.

After the guilty plea, trial counsel sought extensions of time to obtain a completed report from Dr. Savarese on Rice's mental condition for sentencing. Direct Appeal App. 121-22, 142-43, 154-55. The prosecution moved to exclude the admission of expert report or testimony due to untimeliness but noted that, if such evidence was admitted, they would likely depose Dr. Savarese or hire an expert witness on behalf of the State. *Id.* at 144-46; July 2011 Motion Hearing Tr. 12-13; August 2011 Motion Hearing Tr. 10-11. On June 23, 2011, the court granted the motion to exclude, but, on July 11, the trial court granted trial counsel's motion to reconsider and ruled that Dr. Savarese's testimony could be presented at the sentencing hearing. Direct Appeal App. 7, 163. On August 3, 2011, the court denied the trial counsel's motion to continue the sentencing hearing and motion to admit Dr. Savarese's deposition transcript, stating:

> Okay. Well, the deposition will not be entered in lieu of Dr. Savarese. I'm not granting the continuance. [Trial counsel], you have the information that you need. Your mitigating expert does not have to testify. If he's not available, he's not available, but you have the essence of what it is that

8

> you want to argue for mitigation. We will proceed with that, and that will be it.

August 2011 Motion Hearing Tr. 9.

On January 8, 2012, at sentencing, trial counsel presented Rice's mother and sister as witnesses. Sent. Tr. 324-65, 367-87. Both witnesses testified about the challenges faced by Rice during his childhood and adult life, including his family history, criminal background, employment record, and gambling interests, and that they believed that the crime was inconsistent with his character. *Id.* Trial counsel also introduced records indicating that the prosecution rarely sought life without parole for those convicted of similar crimes. *Id.* at 323, 413. He also introduced a transcript of the police interrogation and a police report detailing Rice's arrest to show the misleading nature of the interrogation and that Rice did not plan to kill her. *Id.* at 35, 268, 401. The trial court declined to afford meaningful weight to the sentencing statistics but expressed a desire to sentence Rice based on the facts of his case. *Id.* at 423-24. The trial court found that acceptance of guilt, remorse, and youth were mitigating factors and that the nature and circumstances of the crime, including the brutality and the casual manner in which he returned to the scene of the crime, and the escalating nature of his criminal history were aggravating factors. *Id.* at 433-36. The trial court also noted that, while Rice did not appear to have a violent nature, he committed a violent crime with little provocation. *Id.* On this basis, the trial court sentenced him to life without possibility of parole. *Id.*

On direct appeal, the Indiana Supreme Court remanded Rice's case because it could not determine whether the trial court had improperly relied on non-capital aggravating factors. ECF 10-8. On remand, the trial court found that the murder occurring during the commission of a robbery was a statutory aggravating factor. *Id.* The trial court also found the mitigating factors of admission of guilt, remorse, and youthfulness but noted that Rice's status in a position of trust, his actions immediately after the crime, and escalating violent behavior undermined these mitigating factors. *Id.* The trial court resentenced Rice to life without possibility of parole. *Id.* Rice appealed again to challenge the trial court's consideration of non-capital aggravating factors but the Indiana Supreme Court found that the trial court was entitled to decide how much weight to afford to mitigating factors and that the trial court did not abuse its discretion. *Id.*

At the post-conviction relief stage, Rice asserted that he received ineffective assistance of counsel with respect to his plea and sentencing. ECF 12-2 at 16-19. On January 13, 2016, at an evidentiary hearing, trial counsel testified that he met with the prosecution shortly after he was retained to ask them to not to seek the death penalty. ECF 12-5 at 12. Though the prosecution did not offer any benefits for a guilty plea, trial counsel believed that the sentencing court would credit Rice for accepting responsibility. *Id.* at 12-13. He also sought to avoid an adverse recommendation by a jury, which he believed the sentencing court would follow. *Id.* He advised Rice that he was entitled to a jury trial if he did not plead guilty. *Id.* at 14. At sentencing, he advocated on Rice's behalf by noting the questionable nature of the confession, his

affection toward his niece, and the statistics on the sentences sought by the prosecution in similar cases. *Id.* at 14-16. He explained that the sentencing court did not have substantial experience with life without parole sentences and that he used statistics to provide contexts to the court's sentencing discretion. *Id.* He hired Dr. Savarese as an expert to testify but ultimately chose not to present expert testimony at the hearing. *Id.* at 21-24. Instead, he relied on Rice's mother and sister to testify about Rice's childhood and character to humanize him. *Id.* Specifically, trial counsel testified, "Well, what [Dr. Savarese] developed and what he was able to develop in anticipation of sentencing, from my point of view, I believed in a very credible manner, we would be able to, and I think did, lay it out through primarily Mr. Rice's mother's testimony, who I found to be a very bright, very articulate woman." *Id.* at 21-22. He also interviewed Rice's father but did not believe his testimony would be helpful at sentencing due to his demeanor. *Id.*

Dr. Bart Ferraro, a clinical psychologist, also testified at the evidentiary hearing. *Id.* at 71-97. After reviewing Rice's medical records and examining him, he diagnosed depressive disorder and mixed personality disorder due to deficiencies with his ability to think and perceive accurately, to regulate his emotions, to function with an integrated sense of himself, and to relate to others maturely. *Id.* at 73-77. He experiences generalized anxiety, avoids interpersonal relationships, and thinks of himself in a manner that is inconsistent with reality. *Id.* He also needs others to assume responsibility for major parts of his life and avoids disagreements and seeks approval from those supporting him. *Id.* These conditions may also cause intense bursts of anger and dissociative episodes. *Id.* Dr. Ferraro opined that, in committing the murder, Rice

11

was influenced by his personality disorder due to a confluence of stressors that distorted his ability to think rationally. *Id.* at 79-81. He declined to describe the influence of Rice's personality disorder as extreme or severe or that Rice lacked the capacity to conform his conduct but noted that he did not examine Rice at the time of the crime. *Id.* at 81-83. However, such mental disorders are generally fixed by late adolescence, and Rice did not receive treatment until his incarceration. *Id.* He opined that Rice likely did not plan the murder and that Rice had an unpredictably violent nature that could be alleviated through proper treatment. *Id.* at 84-86. On cross examination, Dr. Ferraro testified that he has examined hundreds of patients with similar mental disorders and that only one or two percent of those patients had committed murder. *Id.* at 88.

Also at the evidentiary hearing, Rice's family and friends testified that they would have testified at the sentencing hearing if they had been asked. *Id.* at 42-71, 111-57. They also testified regarding Rice's troubled relationship with his mother. *Id.* On August 2, 2016, the Lake Superior Court denied Rice's petition for post-conviction relief, noting that, even if Rice had presented the additional witnesses at sentencing, their testimony would not have affected its decision.[4] ECF 12-3 at 98-116.

On appeal, the Court of Appeals of Indiana found that trial counsel was not deficient for advising Rice to plead guilty because it was a strategic decision based on the overwhelming nature of the prosecution's evidence and favorable sentencing considerations. ECF 10-13 at 11-12. The appellate court also noted that, even if the

---

[4] Judge Diane R. Boswell presided over the criminal proceedings and post-conviction review proceedings.

confession was suppressed, the ultimate outcome would likely be unchanged due to the overwhelming nature of the prosecution's other evidence. *Id.* The appellate court also found that trial counsel was not deficient for failing to investigate or present mitigating evidence. It noted that trial counsel had all the information gathered by Dr. Savarese, including interviews with fourteen of Rice's family members and friends and that, to the extent trial counsel did not present this information at the sentencing hearing, it was an acceptable tactical decision. *Id.* at 14-17. The appellate court further noted that Dr. Ferraro declined to testify that the statutory mitigating factors applied to Rice. *Id.*

The appellate court also rejected Rice's claim that his guilty plea was not knowing, intelligent, and voluntary because he had confirmed the contrary under oath at the plea hearing. *Id.* at 7-9. The court found that Rice's sentence of life without parole did not mean that trial counsel had mislead him into pleading guilty. *Id.*

Ineffective Assistance of Counsel

Rice argues that he is entitled to habeas corpus relief because trial counsel rendered ineffective assistance by advising him to plead guilty without a plea agreement and by failing to present sufficient mitigating evidence at the sentencing stage. He states that pleading guilty waived his right to a jury trial and to preserve his challenge to the voluntary nature of his confession on appeal.

To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable

13

professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland*." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

After reviewing the record, the court cannot conclude that the State court's determination on the ineffective assistance of counsel claims was objectively unreasonable. The record supports the finding that advising Rice to plead guilty was a strategic decision based on the overwhelming nature of the prosecution's evidence and a reasonable chance at favorable sentencing considerations. Even without the confession, the prosecution's evidence was compelling and included video evidence and DNA evidence, and there is no indication that a jury would have been likely to acquit him or sentence him less harshly. Further, as trial counsel intended, the trial court credited Rice's remorse and acceptance of guilt as mitigating factors.

The facts of this case are similar to *Jones v. Page*, 76 F.3d 831 (7th Cir. 1996), in which a defendant was charged with three counts of murder, and the prosecution sought the death penalty. Trial counsel observed that the prosecution's evidence, which

included a confession, was overwhelming and that there was no tenable way to defend the case. *Id.* at 841. On the advice of counsel, the defendant plead guilty but was ultimately sentenced to death. *Id.* In resolving the defendant's federal habeas case on appeal, the Seventh Circuit Court of Appeals found that, in light of the prosecution's overwhelming evidence, trial counsel's strategy of pleading guilty and seeking credit for remorse at sentencing was a reasonable strategy. *Id.* at 845. Though the trial court sentenced Rice to the maximum penalty despite these mitigating factors, *Jones* instructs that declining to find that trial counsel's performance was deficient was not an unreasonable decision.

Additionally, the record demonstrates that trial counsel made substantial efforts to investigate and present mitigating evidence at the sentencing hearing, including attempting to obtain an expert report and expert testimony, presenting Rice's mother and sister as witnesses, submitting the police report and confession, and introducing sentencing statistics to suggest that life without parole was an inappropriate sentence for Rice. Trial counsel also had the benefit of the expert's information and findings, and much of Dr. Savarese's pretrial assessment of Rice's mental condition, including dissociation, memory deficiencies, and dependent personality disorder, is readily apparent from the confession transcript and the testimony of his mother and sister. At base, the record demonstrates that, at the sentencing hearing, trial counsel followed the trial court's direction by using such evidence to illustrate the substance of Dr. Savarese's report and that he did so effectively.

Further, the potential benefits of the additional witness testimony adduced at the post-conviction hearing were limited and cumulative. The family members and friends detailed Rice's troubled relationship with his mother but otherwise mirrored the testimony of Rice's mother and sister. Dr. Ferraro's testimony, which indicated that Rice experienced dissociative episodes, dependence on his mother, and depression, substantially resembled the findings of Dr. Savarese, and Dr. Ferraro declined to go further than Dr. Savarese by testifying that statutory mitigating factors applied to Rice. Moreover, the prosecution indicated that they would have worked to counter any mitigation expertise through depositions or by hiring an opposing expert. Accordingly, while trial counsel may have been able to present additional witnesses at sentencing, the court cannot find that the State court's determination on this issue was unreasonable. Moreover, Judge Boswell noted that the additional testimony would not have affected her sentencing decision, which indicates that, even if trial counsel's performance at sentencing was deficient, it did not result in prejudice to Rice. Therefore, the claims regarding ineffective assistance of counsel are not a basis for habeas relief.

Trial Court Error

Rice argues that he is entitled to habeas relief because the trial court erred by accepting his guilty plea as voluntary and intelligent because he relied on his trial counsel's misrepresentation that he would present substantial mitigating evidence at sentencing. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). "The

voluntariness of [a criminal defendant's] plea can be determined only by considering all of the relevant circumstances surrounding it." *Id.* "A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Id.* at 755.

After reviewing the record, the court cannot conclude that the State court's determination on the validity of the guilty plea was objectively unreasonable. The State court reasonably relied on Rice's testimony at the plea hearing in which he acknowledged under oath that he was waiving constitutional rights; he confirmed his understanding of the charges and possible sentences; and he represented that he was not pleading guilty due to any threats or promises. Further, given trial counsel's efforts at sentencing as detailed above, the court cannot fairly characterize trial counsel's statement that he would present substantial mitigating evidence at the sentencing hearing as a misrepresentation. In a similar case, the Seventh Circuit considered whether ineffective assistance of counsel invalidated a criminal defendant's guilty plea, stating, "[A] plea . . . cannot be knowing and voluntary if it resulted from ineffective assistance of counsel." *United States v. Harper*, 934 F.3d 524, 529 (7th Cir. 2019). In denying the defendant's challenge to the voluntariness of the guilty plea, the court found that trial counsel was not ineffective for advising the defendant to plead guilty

17

and noted the plea colloquy in which the defendant acknowledged his understanding of the plea consequences. *Id.* at 529-30. As in *Harper*, trial counsel did not perform deficiently in advising Rice to plead guilty, and Rice affirmatively represented that he was not influenced by promises or threats during the plea colloquy. Therefore, the claim that the trial court erred by accepting his guilty plea as knowing, voluntary and intelligent is not a basis for habeas relief.

Rice further argues that the sentencing court violated the Eighth Amendment by failing to consider sentences in similar cases, which suggested that the sentence of life without parole was inappropriate, and by considering non-statutory aggravating factors. In support of this argument, Rice relies on *Lockett v. Ohio*, 438 U.S. 586, 608 (1978), which holds, "To meet constitutional requirements, a death penalty statute must not preclude consideration of relevant mitigating factors." He further relies on *Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982), which similarly held that courts could not refuse to consider relevant mitigating evidence in death penalty cases. The Supreme Court of the United States has acknowledged that "the penalty of death is different in kind from any other punishment imposed under our system of criminal justice," *Gregg v. Georgia*, 428 U.S. 153, 188 (1976), and has established a line of jurisprudence that primarily applies to death penalty cases. *See e.g., Jurek v. Texas*, 428 U.S. 262 (1976) (individualized consideration); *Zant v. Stephens*, 462 U.S. 862 (1983) (arbitrariness); *Tison v. Arizona*, 481 U.S. 137 (1987) (proportionality). Rice does not cite any authority to suggest that the Supreme Court has extended the holdings of *Lockett* or *Eddings* to his case, which does not involve the death penalty. Significantly, Rice may obtain habeas relief only if he

demonstrates that the State court issued a decision contrary to clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). Therefore, the argument that the sentencing court improperly considered mitigating and aggravating factors is not a basis for habeas relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging Rice to proceed further.

For these reasons, the court DENIES the habeas corpus petition; DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on February 27, 2020

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT